IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PODICARE SERVICES, INC.<br>3440 Hollywood Blvd, Suite 460<br>Hollywood, FL 33021<br><br>    Plaintiff,<br><br>    v<br><br>KENNETH CUCCINELLI, II<br>Purported Acting Director<br>US Citizenship & Immigration Services<br>20 Massachusetts Ave NW<br>Washington, DC 20529<br><br>KEVIN MCALEENAN<br>Acting Director<br>US Department of Homeland Security<br>2707 Martin Luther King Jr Ave NE<br>Washington, DC 20258<br><br>KATHY A. BARAN<br>Director<br>USCIS California Service Center<br>24000 Avila Rd<br>Laguna Niguel, CA 92677<br><br>US CITIZENSHIP & IMMIGRATION SERVICES<br>20 Massachusetts Ave. NW<br>Washington, DC 20529<br><br>    Defendants | Case No.<br><br><br><br><br><br><br>JURY DEMAND |

## **COMPLAINT**

### INTRODUCTION

1.  This is an action brought pursuant to the Administrative Procedure Act, 5 U.S.C. §702, et seq., seeking review of and to hold unlawful and set aside a decision issued by

the Defendant BARAN, Director of the California Service Center (CSC) of the U.S. Citizenship & Immigration Services ("USCIS") in case Number WAC-19-062-50115 dated June 22, 2019, denying Podicare Services Inc's (Plaintiff) Form I-129 petition for nonimmigrant worker to classify Shahid MOHAMMED (Beneficiary) as an H-1B nonimmigrant for the position of Business Intelligence Manager under Section 101(a)(15)(H)(i)(B) of the Immigration and Nationality Act, 8 U.S.C. §1101(a)(15(H)(i)(B).

2. Despite no change in the statute or regulations, under the current Administration (after a promised crackdown by President Trump), H-1B denials and even renewals of H-1B nonimmigrant status have "skyrocketed," and these denials appear to be disproportionately targeted at the tech industry (specifically, Indian IT outsourcing companies).[1] The Plaintiff's company is based in the United States, not India, and is not an outsourcing company.

3. According to recently released federal data, immigration officials denied nearly one out of every four requests for new visas for skilled foreign workers in Fiscal Year 2019, the highest denial rate for new H-1B visa applications in nearly 10 years and almost double the 13 percent rate in the prior fiscal year. The data, which tracks H-1B visa approvals and denials since 2009, was released by the Trump administration to publicize the "success" of the President's "Buy American and Hire American" executive order. However, a sharp increase in denials with no change in the statute and regulations is the definition of arbitrary and capricious agency action.

4. Among H-1B dependent companies (which the Plaintiff is not), denials of new visas increased from about 4 percent in 2016 to 42 percent in FY 2018. The majority of those H-

---

[1] "H-1B visa denial rates skyrocket under Trump," https://www.mercurynews.com/2019/05/06/h-1b-visa-denial-rates-skyrocket-under-trump/

1B dependent companies were outsourcing, staffing and consulting companies. The federal data further shows that the total number of new H-1B visas approved last year declined almost 9 percent from the preceding year, to 87,900. Although there is an annual cap on H-1Bs, it does not include exempt employers, such as universities and research nonprofits. Denial rates for extensions of H-1B nonimmigrant status also spiked last year to their highest level in nearly 10 years.

5. The Plaintiff is the leading provider of wound management services to the managed care industry in the US and Puerto Rico. It is the leading telehealth based platform where clinicians collaborate with wound care nurses in a call center. Plaintiff provides comprehensive wound care to health plan and medical group patients residing in private homes, Skilled Nursing, and Assisted Living Facilities, utilizing the most advanced wound care products. The primary recipients are the neediest and sickest patients from the managed Medicare and Medicaid plans.

6. The Plaintiff, as part of it's expertise renders benefits of developing customized solutions that provide solutions per their clients' exact requirements and provides only those functionalities required by a client. In its regular course of business, it normally employs individuals in the same or similar position of Business Intelligence Manager who have obtained a minimum of a bachelor's degree.

7. Pursuant to the INA, a United States employer may sponsor a qualified noncitizen to temporarily enter the United States to "perform services…in a specialty occupation." 8 U.S.C. §§1101(a)(15(H)(i)(b); 1184(c). Defendant, U.S. Citizenship & Immigration Service ("USCIS")

administers the H-1B program. Put simply, a specialty occupation is an occupation that, at a minimum, requires a bachelor's degree or its equivalent to successfully perform.

8. Plaintiff filed an H-1B petition on behalf of the Beneficiary on November 30, 2018. On March 19, 2019 after almost four (4) months, the Defendant issued a Request For Evidence (RFE) requesting the Plaintiff to establish that the proffered position Business Intelligence Manager is a Specialty Occupation and the Beneficiary meets the necessary degree requirement for the Specialty Occupation.

9. The Plaintiff on June 5, 2019 responded to said RFE and subsequently on June 22, 2019, the Defendant denied the H-1B petition on the grounds that 1) Plaintiff has failed to establish that the proffered position is a Specialty Occupation and 2) the Plaintiff has not shown that the Beneficiary is qualified to perform the duties of the proffered position.

## JURISIDICTION

10. This is a civil action against the United States arising under the Immigration and Nationality Act, 8 U.S.C. §1101, *et seq.* and the Administrative Procedure Act, 5 U.S.C. §701, *et seq.*, both laws of the United States. The original jurisdiction over this matter is vested in this Court by 28 U.S.C. §1331.

## VENUE

11. Pursuant to 28 U.S.C. §1391(e), venue is proper in the District of Columbia, where Defendants USDHS, USCIS are headquartered, and where Defendants Cuccinelli and McAleenan serve in their official capacities for purposes herein.

## PARTIES

12. Podicare Services, Inc. incorporated in 2000 and based in Florida is the leading provider of wound management services to the managed care industry in the US and Puerto Rico. Its principal place of business is in Hollywood, Florida and has a gross annual revenue of approximately $35 million. It is the leading telehealth based platform where clinicians collaborate with wound care nurses in a call center. Podicare Services, Inc. provides comprehensive wound care to health plan and medical group patients residing in private homes, Skilled Nursing, and Assisted Living Facilities, utilizing the most advanced wound care products.

13. Defendant Kenneth Cuccinelli is the purported Acting Director of the United States Citizenship & Immigration Services ("USCIS"), an agency within the DHS to whom the Secretary's authority has in part been delegated, is subject to the DHS Secretary's supervision, and is an official generally charged with the overall administration of immigration benefits and services. 8 C.F.R. §100.2(a).

14. Defendant Kevin McAleenan is the Acting Secretary of the Department of Homeland Security ("DHS"), and this action is brought against him in his official capacity. He is generally charged with enforcement of the Immigration and Nationality Act and is further authorized to delegate such powers and authority to subordinate employees of the Department of Homeland Security. 8 USC § 1103(a); 8 C.F.R. § 2.1.

15. The Defendant, United States Citizenship and Immigration Services (USCIS), a component of the Department of Homeland Security, is an agency within the meaning of the Administrative Procedure Act (APA), 5 U.S.C. §551(1). USCIS is responsible for the adjudication of immigration benefits, including nonimmigrant visa petitions.

16. Defendant, Kathy A. Baran, is the Director of the California Service Center. Among other things, the California Service Center is responsible for adjudicating visa petitions such as the H-1B petition filed by Plaintiff. The Defendant erroneously denied the H1-B nonimmigrant worker petition which was filed by the Plaintiff and her decision being challenged in this matter was issued by the California Service Center (CSC) in Laguna Niguel, California. The CSC is the designated USCIS office authorized to receive and adjudicate H-1B petitions for specialty occupations filed by employers in the state of Texas. Defendant is sued in her official capacity.

## EXHAUSTION OF REMEDIES

17. Although 8 C.F.R. §214.2(h)(10)(ii) provides that denial of a petition for classification under Section 101(a)(15)(H) of the Immigration and Nationality Act may be appealed to the Administrative Appeals Office under 8 C.F.R. part 103, neither this Act nor the governing regulations provide that such an appeal is a prerequisite for judicial review. Accordingly, filing such an appeal is not a prerequisite to Plaintiff's action for review under section 10b of the Administrative Procedures Act, *Darby v. Cisneros*, 113 S.Ct. 2539, 2542-45, 125 L. Ed. 2d 113, 61 U.S.L.W. 4679 (1993); *see also, Karen Yuen Fong Young v. Reno*, 114 F.3d 879 (CA9 1997).

## ISSUES PRESENTED

18. Plaintiff's complaint raises the following issues of fact and law to be decided by this Court:

   a) Whether the position offered to the Beneficiary qualifies as a specialty occupation pursuant to 8 U.S.C. §1101(a)(15)(H)(i)(B)?

b) Whether or not the Beneficiary is qualified to perform the job duties of the proffered position?

c) Was Defendant's decision denying the Beneficiary's H-1B petition arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law pursuant to 5 U.S.C. §706(2)(A)?

## LEGAL BACKGROUND

19. In visa petition proceedings, the burden is on the petitioner to establish eligibility for the benefit sought. *See Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966). The standard of proof in most administrative immigration proceedings, and the one that is applicable in this case, is "preponderance of the evidence." *See Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010).

20. The preponderance of the evidence standard means that the petitioner must submit evidence that demonstrates his claim is "probably true" where the determination of truth is made based on the factual circumstances of each individual case. *Matter of E-M-,* 20 I&N Dec. 77, 79-80 (Comm'r 1989). In evaluating the evidence, *Matter of E-M-* also stated that "[t]ruth is to be determined not by the quantity of evidence alone but by its quality." *Id.* At 80.

21. Even if the director has some doubt as to the truth, if the petitioner submits relevant, probative, and credible evidence that leads the director to believe that the claim is "more likely than not" or "probably" true, the applicant or petitioner has satisfied the standard of proof. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987) (discussing "more likely than not" as a greater than 50% chance of an occurrence taking place); *see also* USCIS Adjudicator's Field Manual, Ch. 11.1(c).

22. The adjudicator is to review the quality of the evidence and is required to "examine each piece of evidence for relevance, probative value, and credibility, both

individually and within the context of the totality of the evidence, to determine whether the fact to be proven is probably true." *If the director can articulate a material doubt*, it is appropriate for the director to either request additional evidence or, if that doubt leads the director to believe that the claim is probably not true, deny the application or petition. *See Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010) (emphasis added).

23. The H-1B specialty occupation visa program, codified at 8 U.S.C. §1101(a)(15)(H)(i)(b), allows United States employers to bring foreign workers holding at least the equivalent of a bachelor's degree into the United States for employment in specialty occupations.

24. Congress permitted foreign professional employees in "specialty occupations" to work in the United States on H-1B status for a total of 6 years in three-year increments.

25. An H-1B visa is available to:

> An alien…who is coming temporarily to the United States to perform services…in a specialty occupation described in Section 1184(i)(1) of this title…who meets the requirements for the occupation specified in Section 1184(i)(2) of this title…and with respect to whom the Secretary of Labor determines and certifies to the [DHS] that the intending employer has filed with the Secretary an application under Section 1182(n)(1) of this title…8 U.S.C. §1101(a)(15)(H)(i)(b).

26. Turning to USCIS' role in the administration of the H-1B program, other than rendering admissibility determinations required of all visa applicants, Congress delegated two principal tasks to USCIS: 1) determining whether the position the employer seeks to fill qualifies as a "specialty occupation" and 2) assessing whether the noncitizen worker meets the minimum requirements for that position. 8 U.S.C. §1184(i); 8 C.F.R. §214.2(h)(4)(i)(B)(2).

27. The regulation at 8 C.F.R. § 214.2(h)(4)(iii)(A) states: "(A) Standards for specialty occupation position. To qualify as a specialty occupation, the position must meet <u>one</u> of the following criteria:

a) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
b) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
c) The employer normally requires a degree or its equivalent for the position; or
d) The nature of the specific duties is so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree."

28. In addition, under 8 C.F.R. §214.2(h)(4)(iii)(D)(1) through (iii)(D)(4), the Beneficiary may qualify by virtue of their education, practical experience and/or specialized training. For purpose of paragraph (h)(4)(iii)(C)(4) of this section, the equivalence to completion of a U.S. baccalaureate or higher degree shall mean achievement of a level of knowledge, competence, and practice in the specialty occupation that has been determined to be equal to that of an individual who has a baccalaureate or higher degree in the specialty and shall be determined by one or more of the following:

a) An evaluation from an official who has authority to grant college-level credit for training and/or experience in the specialty at an accredited college or university which has a program for granting such credit based on an individual's training and/or work experience;
b) The results of recognized college-level equivalency examinations or special credit programs;
c) An evaluation of education by a reliable credential evaluation service which specializes in evaluating foreign educational credentials;
d) Evidence of certification or registration from a nationally-recognized professional association or society for the specialty that is known to grant certification or registration to persons the occupational specialty who have achieved a certain level of competency in the specialty.

## FACTUAL BACKGROUND

29. On November 30, 2018, the Plaintiff submitted Form I-129, a Petition for Nonimmigrant Worker on behalf of the Beneficiary, Shahid Saleem Mohammed, a citizen of India to the USCIS, California Service Center. The Plaintiff requested H-1B status to employ the Beneficiary from January 2, 2019 until January 1, 2022 in the specialty occupation of "Business Intelligence Manager." [**See Exhibit A**].

30. The Petition was filed because of a *bona fide* business need for a head of business intelligence to drive data and analytics with the goal to improve care for patients, heal patients sooner and at lower costs to them, ensure patient progress is based on data based tracking of healing, manage and modify treatment plans based on healing trajectory through data analytics and machine learning, and proactively identify and manage patients who will have a harder time healing (such as those suffering from diabetes, obesity, being otherwise bedridden, or whose socioeconomic status limits their ability to receive appropriate treatment. The role is absolutely critical.

31. In 2018 Plaintiff ended the year with approximately $35 million in revenue; current balance sheet shows a healthy asset and equity totalling approximately $27 million with nearly $20 million cash in the bank.

32. In May 2019, Plaintiff moved into an approximately 25,000 square foot state-of-the-art facility in South Florida. Plaintiff employs over 300 workers in the U.S. In 7 states, including Puerto Rico, with another 45 overseas. Plaintiff plans operations in an additional 3 to 4 states by the first quarter of 2020, in addition to growing existing markets.

33. In the Plaintiff's Support Letter submitted with the H-1B petition the Plaintiff, listed the following duties as specific duties for the proffered position of Business Intelligence Manager:

- As the Business Intelligence Manager, Mr. Mohammed will lead Podicare Services Inc.'s efforts, which include working on analyzing competitive market strategies through analysis of related products, services and market, using statistical and quantitative models necessary for developing predictive machine learning models, and leading development efforts for building user friendly web and mobile apps for the predictive machine learning models to enable users of all capacity across the organization to run these models.

34. In its H-1B Support Letter, the Plaintiff identified their degree requirement for the proffered position as a Bachelor's Degree in Computer Information Systems or equivalent and explained that the Beneficiary would utilize his educational background in Masters in Business administration and his Bachelor's degree in Computer Science in performing these job duties. The Plaintiff explained that this position involves analyzing competitive market strategies through analysis of related products, services and markets.

35. In addition, the Plaintiff explained that the Beneficiary's education and progressive work experience were professionally and formally evaluated to be equivalent to a U.S. Bachelor's Degree in Information Technology.

36. Defendant issued a receipt bearing case number WAC1906250115 dated November 30, 2018 to reflect that Defendant had received the petition, along with required filing fees. **[See Exhibit B]**

37. On March 19, 2019, after almost 4 months of keeping the petition pending the Defendant issued a Request for Evidence ("RFE") requesting the Plaintiff to establish that the beneficiary's proffered position is a specialty occupation and the Beneficiary meets the necessary degree requirement to perform the job duties of the specialty occupation.

38. In the issued RFE, the Defendant noted that since the Occupational Outlook Handbook does not include a description of the proffered position filed under the O*NET code "Computer Occupations, all other", Plaintiff has not sufficiently established that the position normally requires a minimum of a bachelor's degree in a specific specialty.

39. On June 4, 2019, in a 711 page submission, Plaintiff responded to the RFE, along with supporting documents for adjudication. In the Plaintiff's response the Plaintiff further clarified that their offered job is a Business Intelligence Manager but they used the Occupation Classification of "Computer Occupations, all other" in applying for the Labor Condition Application (LCA) because that was the only available classification which was most comparable to their job description. **[See Exhibit C: Extract of RFE Response].**

40. Further, the Plaintiff in their response to the RFE submitted additional evidence to establish that the Business Intelligence Manager fell within a specialty occupation pursuant to each of the criterion listed under 8 C.F.R. §§ 214.2(h)(4)(iii)(A) : (1) baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position; (2) the particular position is so complex or unique that it can be performed only by an individual with a degree); (3) the employer normally requires a degree or its equivalent for the position; and (4) the nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a bachelor's or higher degree. Any one of these, standing alone, demonstrated that the position was a specialty occupation.

41. To establish each of the above stated prongs, the Plaintiff with their response to the RFE submitted very detailed description of their job duties and detailed work products

completed by the beneficiary as well as job vacancy notices for Business Intelligence Manager where other employers have required a minimum of a Bachelor's degree.

42. As to the beneficiary's education and qualifications to establish that the beneficiary meets the regulatory requirements, the Plaintiff submitted evidence that the beneficiary qualifies under the fourth prong of 8 CFR 214.2(h)(4)(iii)(C) because he has a foreign diploma in Computer Science and a Master's in Business Administration from the University of California, Riverside.

43. Despite the strong supporting evidence provided, on June 22, 2019, Defendant denied Plaintiff's H-1B petition. In their denial, the Defendant erroneously, arbitrarily, or capriciously concluded that the Plaintiff did not meet *any* of the four criteria enumerated at 8 C.F.R. §214.2(h)(4)(iii)(A) and as such, the Plaintiff did not establish that the proffered position was a specialty occupation. **[See Exhibit D]**.

44. In addition, the Defendant also erroneously, arbitrarily, or capriciously concluded that although the breakdown of the job duties focused on the on the technical requirements of the position, it did not establish how those duties are so complex that they would require at least a bachelor's degree.

45. Plaintiff contends that the denial is a misreading of the record and lack of due consideration of Plaintiff's petition and supporting materials, with the ultimate result of depriving the company of an absolutely crucial employee.

**CAUSE OF ACTION**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**
**5 U.S.C. § 706(2)(A)**

46.     The decision of the Defendant on Plaintiff's petition for an H-1B nonimmigrant petition worker must be based upon the statutory and regulatory definition of specialty occupation. The statue defines specialty occupation as follows:

> "Specialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States".

47.     The Plaintiff contends that they have met their burden of proof to demonstrate that the proffered position "Business Intelligence Manager" is a Specialty Occupation. However, the defendant's analysis of the facts and law with respect to each of the regulatory prongs is erroneous. With respect to the first regulatory criterion, 8 C.F.R. § 214.2 (h)(4)(iii)(A)(1), the Defendant incorrectly imposes the need for an individualized showing that the employer's position satisfies the specialty occupation definition, when what is required under this criterion is a showing that a "bachelor's or higher degree or its equivalent is normally the minimum requirement for entry into the particular position." The defendant also misreads the OOH and O*Net in analyzing this criterion and fails to properly consider and credit Plaintiff's evidence.

48.     As to the second prong of the second regulatory criterion, 8 C.F.R. § 214.2(h)(4)(iii)(A)(2), Plaintiff must show that is the degree requirement is "common to the industry in parallel positions among similar organizations or in the alternative an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree." In order to establish that the degree requirement is common to the industry in parallel positions the Plaintiff provided several job posting notices for the position

"Business Intelligence Manager" where a Bachelor's degree in Computer Science/Information Technology/Engineering or related has been asked as the minimum requirement. The Defendant dismissed this evidence stating "it is not sufficient to claim an organization is similar and in the same industry" if the organizations are not similar in characteristics. All that this criterion requires is a showing that a degree requirement is common to the industry in parallel positions and not that the organizations must be similar in scope of operations, size, staffing and revenue like the Defendant seem to interpret. Defendants' interpretation renders the criterion meaningless if a Petitioner has to prove that a position to be considered a specialty occupation all petitioners must be the same size, similar in scope and revenue and staffing.

49. As to the third regulatory criterion, 8 C.F.R. § 214.2 (h)(4)(iii)(A)(3), requiring a showing that the employer normally requires a degree or its equivalent, the Defendant's interpretation renders the criterion meaningless by indicating that it cannot accept evidence of the Plaintiff's normal practice as sufficient—notwithstanding the plain language of the regulation. The Defendant completely ignores the submitted record of Plaintiff's past or previous hiring practices for this exact position requiring a bachelor's degree, arbitrarily and capriciously dismissing Plaintiff's stated needs. There is no requirement in the statute that Plaintiff have previously hired a Business Intelligence Manager; to read the statute as so requiring adds a requirement that does not exist.

50. As to the last prong of the second regulatory criterion, 8 C.F.R. § 214.2(h)(4)(iii)(A)(4), the Defendant misrepresents Plaintiff's job description as "it does not establish how these duties are so complex or unique that they require at least a bachelor's degree in a specific specialty or its equivalent" a conclusion that is contradicted by the voluminous record evidence.

USCIS also erroneously imposes a nonexistent requirement, i.e., that Plaintiff must demonstrate that its job duties should show 'additional specialization or complexity' than "the normal duties of a "Business Intelligence Manager" position. All that this criterion requires, however, is a showing that the "nature of the specific duties" are specialized and complex that the knowledge required to perform the duties" is a Bachelor's or higher." 8 C.F.R. § 214.2(h)(4)(iii)(A)(4).

51. The Plaintiff also contends that they have more than met their burden of proof to demonstrate that the Beneficiary's degree in Computer Science is a bachelor's degree in the specialty for the proffered position of "Business Intelligence Manger" as set forth in the petition and supporting evidence.

52. We contend that the Defendant ignored evidence in the record that supports the approval of the instant petition in favor of misinterpretation or disregard of the evidence in the record and that the Defendant imposed a heightened standard for the degree requirement based on an overly narrow reading of the job based on the job title, and applies applied inconsistent and nonexistent adjudicative standards for H-1B determinations. Defendant's decision was arbitrary, capricious, and not according to the law.

53. Moreover, the Plaintiff contends that the Defendant's actions in denying this petition, after approving so many of the same or similar petitions for other employees in past years, is based not on the reasonable and unbiased application of the law, but rather a new and hostile animus of the current Administration toward immigrant workers;

54. The APA instructs that this Court "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## **PRAYER**

WHEREFORE, in review of the arguments and authority noted herein, Plaintiff respectfully requests that this Court grant it the following relief:

1) Assume jurisdiction over this matter;

2) Set an expedited discovery schedule with regard to the Defendant's production of any and all government memoranda, policy guidance, training materials or other instructions to USCIS officers with regard to adjudicating H-1B nonimmigrant visas that have contributed to the increasing rates of denial of H-1B petitions;

3) Set aside the decision of Defendant dated June 22, 2019, denying the Plaintiff's petition to classify the Beneficiary as an H-1B nonimmigrant under Section 101(a)(15)(H)(i)(B) of the Immigration and Nationality Act, 8 U.S.C. §1101(a)(15)(H)(i)(b), on the grounds that the denial is arbitrary, capricious, and not in accordance with the law;

4) Order USCIS to grant the Petition;

5) Grant Plaintiff's reasonable attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412(d) & 5 U.S.C. §504 et seq; and

6) Grant such other and further relief at law and in equity as justice may require.

Respectfully Submitted,

THE HMA LAW FIRM, PLLC

_____/s/_____
Hassan M. Ahmad, Esq. (DDC: MD16049)
7926 Jones Branch Dr., #600
McLean VA 22102
Tel 703.964.0245
Fax 703.997.8556
hma@hmalegal.com
Attorney for Plaintiff